IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| MAMIE L. GONZALES § § § VS. § § § HARBOR HEALTHCARE SYSTEM, LP § | CIVIL NO. 9:23-cv-00084  JURY DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

#### I.     INTRODUCTION

1. Plaintiff Mamie L. Gonzales brings this action for violation of federal and state law related to her termination of employment by Defendant Harbor Healthcare System, LP and would respectfully show the Court as follows.

#### II.    JURISDICTION AND PARTIES

2. Jurisdiction of this Court is invoked pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, providing for relief against discrimination on the basis of disability in employment. Additionally, Plaintiff alleges violations of the Family Medical Leave Act.

3. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

   (a)   a charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

   (b)   A Notification of Right to Sue was received from the EEOC on March 30, 2023.

   (c)   This Complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

4. Plaintiff, Mamie L. Gonzales, is a citizen of the United States and the State of Texas who resides in Angelina County, Texas.

5. All of the discriminatory employment practices alleged herein were committed within the Eastern District of Texas.

6. Defendant, Harbor Healthcare System, LP is a Texas limited partnership which operates a healthcare company from its headquarters in Beaumont, Texas. Harbor Healthcare System, LP will be served through its registered agent for service, HHCS Managers, LLC, 3406 College St, Ste 200, Beaumont, TX 77701.

7. Harbor Healthcare System, LP is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. Harbor Healthcare System, LP is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, 42, U.S.C. § 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

9. Harbor Healthcare System, LP employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

10. Harbor Healthcare System, LP employs 50 or more employees and is an "employer" within the meaning of 29 USC § 2611(4)(A) of the Family Medical Leave Act (FMLA).

## II.  STATEMENT OF FACTS

11. Defendant, Harbor Healthcare System, LP (hereinafter "Defendant" or "Harbor Healthcare") operates a healthcare company throughout at least seven states in the United States. Plaintiff, Mamie L. Gonzales (hereinafter "Plaintiff" or "Gonzales") was employed as nurse.

12. On August 30, 2021, while Gonzales was bathing a patient she hurt her wrist. Gonzales informed Kim Owens, her supervisor, of the injury. Gonzales finished her work for that

day and immediately sought medical care for the injury. Gonzales went to Woodland Heights Medical Center in Lukin where she was treated and diagnosed with a sprained wrist. Gonzales was given a doctor's note with restriction of light duty until released by a physician. She was also told to follow up with an Orthopedic Specialist.

13. The next day, Gonzales texted her supervisor to let her know that she went to the hospital the prior evening and was treated for a sprained wrist due to the lifting incident with the patient. Gonzales informed her supervisor Owens that she was calling off work that day. Owens told Gonzales that she really needed er at work that day because another co-worker had called in sick. Gonzales told her that she had a doctor's note that she would be out of work that day. Owens was upset that Gonzales had not told her the previous day. Owens also said she was "super not happy" and that Gonzales was going to be taking a drug test that day. Owens also informed Gonzales that she would be filling out some forms with HR. A claim for workers' compensation was instituted on behalf of Gonzales.

14. On September 3, 2021, Gonzales went to the Urgent Care Doc / workman's comp and was released for a right wrist sprain on light duty. Gonzales was informed that there was no light duty at that time, so she was taken off work until September 14, 2021.

15. On September 8, 2021, Gonzales went to an orthopedic specialist, Dr. Ryan Patterson with Azalea Orthopedics in Tyler Texas. Dr. Patterson treated Gonzales for a right wrist sprain and put her in a cast for 3 weeks. At that time, Gonzales stayed home until September 14, 2021.

16. On September 14, 2021, Gonzales returned to work with the restriction of light duty and no lifting / carrying / pulling / pushing on her right wrist. Gonzales went back to Dr. Patterson on September 29, 2021, for a follow-up and he put her in a brace for 5 weeks due to her right wrist sprain. Gonzales was still on restriction of no pushing, pulling lifting, or carrying due to the wrist

sprain.

17.     Between this time, Harbor Healthcare was not following the doctor's restrictions. Gonzales was required to do things outside of her restrictions like lifting boxes, lifting folders, cleaning the office, taking out trash.  When Gonzales went back to the doctor on November 1, 2021, her wrist was still not healed so Dr. Patterson kept the same restrictions in effect - no lifting or carrying more than 1 pound. He also requested that Gonzales get an MRI to see if she might have a TFCC tear.

18.     Because of the doctor's continued restrictions and the fact that her supervisor was requiring her to work outside of the restrictions, Gonzales called the Harbor Healthcare corporate office and told them that her supervisor was not following the restrictions. The corporate office told Gonzales to call her doctor and have him take her out of work completely so she could heal at home. Gonzales was then taken off work on November 4, 2021 and placed on a FMLA leave of absence beginning November 5, 2021.

19.     During the time that Gonzales was working at the office after her injury, the office atmosphere had become toxic with respect to how she was treated. The work that Gonzales was doing in the office, was work that was supposed to be done by the office coordinator who was behind several months of paperwork. There were instances of Gonzales' supervisor being very hateful in the work environment. Gonzales felt at that time that she was being punished for getting hurt.

20.     Gonzales went back to the doctor on November 29, 2021 for an MRI, and it was discovered that her wrist sprain was in fact a TFCC tear. On December 23, 2021, Gonzales had surgery on her right wrist for the TFCC tear.

21.     Gonzales was informed by Harbor Healthcare that her FMLA leave ended on January 1, 2022 despite the fact that she had not exhausted twelve weeks of leave at that point.

Gonzales went back to the doctor on January 5, 2022, for a follow-up from surgery and was put in a cast for 3 weeks. Gonzales went back to Dr. Ryan Patterson on January 26, 2022 and was put in a wrist brace for 6 weeks, and Gonzales started therapy again after that.

22.     Gonzales was put on general medical leave on February 1, 2022, and was told that it expired on April 22, 2022.  Gonzales was told that if she was not able to return to work without restrictions by April 22, 2022 she would be terminated.

23.     Gonzales then went back to Dr. Patterson on March 9, 2022 and was released to go back to work on March 21, 2022 with restriction of no pushing/pulling/lifting and carrying and no use of right wrist. Harbor Healthcare refused to accommodate the restrictions and would not allow Gonzales to return to work. Each time Gonzales would go to the doctor, she sent Harbor Healthcare's HR department the workers compensation work status report.

24.     Gonzales went back to Dr. Ryan Patterson on April 20, 2022 and was still on restriction of no use of her right wrist. Gonzales once again told her employer of the restrictions and was told that the company could not accommodate her restrictions and that she would be terminated from Harbor Healthcare.

25.     On April 25, 2022, Gonzales was terminated for being unable to return to work from the leave of absence. Gonzales was able to return to work, but Harbor Healthcare refused to accommodate Gonzales' restrictions.

### III.     CLAIMS FOR RELIEF

#### (A) AMERICANS WITH DISABILITIES ACT

26.     The allegations contained in Paragraphs 1 through 25 are hereby incorporated by reference.

27.     As a result of her medical conditions described herein, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42

U.S.C. § 12102(2). More particularly, Plaintiff has impairments that substantially limits one or more of her major life activities, has a record of such an impairment, and was regarded by Harbor Healthcare as having such an impairment.

28.     Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as a nurse's aide for Harbor Healthcare.

29.     The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability, *TFCC Tear in her wrist*, within the meaning of the ADA. Based upon the stated allegations, Plaintiff asserts four claims under the ADA: (1) Disparate treatment based upon Defendant's termination of Plaintiff based upon qualification standards and other criteria that screened her out as an individual with disabilities; (2) Disparate impact based upon the Fitness-for-Duty program which had an adverse impact on Plaintiff as an individual with disabilities by screening Plaintiff from employment by reason of her diagnoses; (3) Unlawful medical inquiry – alleging violation of 42 U.S.C. §12112(d)(4)(A), which provides that an employer "shall not require a medical examination an shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity;" and (4) failure to make reasonable accommodation to Plaintiff's disabilities, which constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A). In connection with Plaintiff's accommodation claim, Harbor Healthcare failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation with

Plaintiff.

### (B) FAMILY AND MEDICAL LEAVE ACT

30. The allegations contained in Paragraphs 1 through 25 are hereby incorporated by reference.

31. The Family and Medical Leave Act contains two distinct provisions: (1) an entitlement clause and (2) an anti-discrimination clause. See 29 U.S.C. §§ 2612, 2615. The entitlement clause provides a series of entitlements which give certain rights to employees such as the right to have their job back once they return from a qualified leave. This FMLA also contains provisions prevent an employer from retaliating against an employee for taking FMLA leave. See 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b). Defendant is in willful violation of the FMLA. Defendant violated 29 U.S.C. §2612, §2614 and 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

32. Plaintiff availed herself of a protected right under the FMLA and was subsequently terminated. There is a causal connection between the Plaintiff's protected activity and Defendant's decision to terminate Plaintiff. Plaintiff's taking of FMLA was a motivating factor in the decision to terminate, and as such was a cause of Plaintiff's damages, as set forth below.

33. In addition, an employee who takes FMLA leave under section 2612 shall be entitled, on return from such leave, to be restored by the employer to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. See 29 U.S.C. §2614(a)(1). Furthermore, the taking of FMLA leave under section 2612 shall not result in the loss of any employment benefit accrued prior to the date on which the leave commended. See 29 U.S.C. §2614(a)(2). Defendant violated these provisions of the FMLA by terminating Plaintiff while she was on FMLA.

### (C)  TEXAS LABOR CODE §451

34. The allegations contained in Paragraphs 1 through 25 are hereby incorporated by reference.

35. Plaintiff would show that Defendant discharged her and discriminated against her in violation of § 451.001 of the Texas Labor Code because she filed a workers' compensation claim in good faith, hired a lawyer to represent her in a workers' compensation claim, instituted or caused to be instituted a workers' compensation claim in good faith, and testified in a workers' compensation proceeding. Plaintiff would show that Defendant would not have terminated her employment when it did, had Plaintiff not engaged in an activity protected under § 451.001 of the Texas Labor Code.

### IV.  ACTUAL DAMAGES

36. As a direct and proximate result of Harbor Healthcare's discrimination on the basis of disability and violations of the law described above, Plaintiff has suffered lost wages and benefits and lost employment opportunities.

37. Defendant's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

38. Defendant inflicted extreme emotional distress upon Plaintiff by discharging Plaintiff on the basis of her disability. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

39. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

## V. PUNITIVE DAMAGES

40. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VI. LIQUIDATED DAMAGES

41. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff further seeks liquidated damages in an amount equal to wages, salary, employment benefits, or other compensation lost by Plaintiff.

## VII. ATTORNEYS' FEES AND EXPERT FEES

42. A prevailing party may recover reasonable attorneys' and experts' fees. SEE 42 U.S.C. §2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for attorney's fees, expert fees and other costs pursuant to 29 U.S.C. §2617(a)(3).

## VIII. JURY DEMAND

43. Plaintiff demands trial by jury.

## IX. RELIEF REQUESTED

44. Plaintiff requests the judgment of this Court against Defendant, Harbor Healthcare as follows:

(a) Find and hold that Plaintiff has suffered damages as a result of Defendant's violations of the law described herein;

(b) Order that Plaintiff be awarded the back pay she would have earned, with related monetary benefits and interest thereon, had she been reinstated to her position;

(c) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(d) Award Plaintiff liquidated damages pursuant to the FMLA;

(e) Award Plaintiff punitive damages;

(f) Award Plaintiff attorney fees and expert fees, including litigation expenses, and the cost of this action; and

(g) Grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
HOMMEL LAW FIRM PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Telephone/Fax

ATTORNEY FOR PLAINTIFF